# COURT OF APPEALS
# FOR THE STATE OF GEORGIA

---

## CASE NO. A21A0753

---

### RABUN COUNTY BOARD OF EDUCATION,

**Appellant,**

**v.**

### DR. BRONWYN RANDEL,

**Appellee.**

---

## BRIEF OF APPELLANT

---

HARBEN, HARTLEY, & HAWKINS, LLP

Brian C. Smith
Georgia Bar No. 001306
340 Jesse Jewell Parkway, Suite 750
Gainesville, Georgia 30501
(770) 534-7341
Attorney for Appellant

1

# PART ONE

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. Introduction and Proceedings Below

At an evidentiary hearing held before the Rabun County Board of Education ("Local Board"), the Superintendent presented the following evidence: Appellee refused to assist students assigned to her while she was a virtual academy teacher despite multiple directives to do so, she was regularly observed sitting at her computer rather than assisting students in need, she lacked preparedness during observations, and was generally unwilling or unable to perform the duties assigned to her. As a result, many students had to be removed from her class, other classes became overcrowded, and nearly half of the students assigned to Appellee failed their courses by the end of the school year. Accordingly, exercising its constitutional authority to control the quality of its teaching staff, the Local Board unanimously concluded that Appellee's annual employment should not be renewed.

Appellee appealed the decision of the Local Board to the State Board of Education ("State Board"). Like the Local Board, the State Board determined that cause existed to justify the nonrenewal of Appellee's teaching contract and that the hearing before the Local Board was conducted in accordance with the due process requirements set forth under Georgia's Fair Dismissal Act, O.C.G.A. § 20-2-940,

2

*et seq.* Appellee appealed the decision of the State Board to the Superior Court of Rabun County, which on September 21, 2020, reversed the unanimous decisions of both the Local Board and State Board upon appellate review. The **sole** basis for the reversal by the superior court is that it believed that the hearing officer should have required the Local Board to appoint a tribunal to hear the case and make recommendations to the Local Board because Appellee had filed an EEOC charge of discrimination – a charge that contained no allegations against any individual board member or the board of education itself, and that the Local Board was **not** even aware had been filed. The Rabun County Board of Education now appeals the Order of the superior court reversing the Local and State Board's decisions.

**B. Statement of Facts**

In May 2018 Appellee requested an evidentiary hearing before the Rabun County Board of Education under the Fair Dismissal Act of Georgia, O.C.G.A. § 20-2-940, *et seq.*, to challenge the Superintendent's decision not to renew her annual contract of employment. After rescheduling, that hearing was ultimately set for November 13, 2018. But the day before the hearing, Appellee filed a motion to require the Local Board to appoint a tribunal to hear the case under O.C.G.A. § 20-2-940(e)(1), which gives local boards of education **discretion** to designate a tribunal to conduct a hearing and submit its findings and recommendations to the local board for its final decision. [R2-217-229].

3

To understand the nature of Appellee's motion and the lack of relevance her argument had on the Local Board's ability to hear the case themselves, it is necessary to review the factual basis for Appellee's proposed nonrenewal and her actions later used as the basis for her motion. Importantly, the basis for her nonrenewal did not involve any involvement or knowledge by any member of the Local Board.

Appellee was a classroom teacher in Rabun County High School's Wildcat Virtual Academy (WVA or Virtual Academy), in which students work on separate online courses together in a classroom setting. Appellee's role was to assist students with online instruction and administer the program so that students could take quizzes and exams as needed. Despite repeated directives throughout the 2017-2018 school year to assist students who ask for help, Appellee repeatedly refused to do so.

Multiple students testified that it was almost a daily occurrence for them to request help from Appellee and receive none. [R2-412; 426-7; 436; 451]. Appellee would frequently tell students that she was coming to assist them, but she would never return to help. [R2-412]. However, that behavior by Appellee was only nominally better than her frequent refusal to even acknowledge that their hands were raised in the first place. [R2-451]. Students ultimately had to resort to requesting help from other teachers who were not in the classroom to receive

4

assistance on instruction or to have a quiz reset in the online program – a process that only took a matter of seconds but prevented students from moving forward in the course until it was done. [R2-324]. They sought assistance from other teachers and reported their concerns to administrators because they feared they would not pass their courses. [R2-413-4; 452]. On October 20, 2017, the Director of the Wildcat Virtual Academy, Will Howell, met with Appellee and gave her a letter of directive to address the problems that appeared in her classroom, having observed himself the lack of instruction and support Appellee was providing to her students. [R2-1195-6]. In particular, the letter directed Appellee to help students when they ask for help, not to ignore students, and to be willing to assist students at all times. [R2-360-1; 1195-6]. Sadly, Appellee denied that students were not receiving help from her and indicated that the reports were fabricated. [R2-362-3; 1197-9].

Many of the issues that Mr. Howell addressed with Appellee continued with no apparent improvement. Less than two weeks later, Assistant Principal Justin Spillers observed Appellee's classroom and immediately noticed extremely concerning issues. [R2-297]. It was obvious that Appellee had not prepared her lesson for the class that day. When Mr. Spillers sat in the class, Appellee told the class that they would be reading from "The Raven," but her students pointed out that they had already completed that assignment two weeks before [R2-298]. Appellee suggested that the class complete a different reading, but then changed

5

her mind and told the students to complete a worksheet. *Id*. As the class went on, Mr. Spillers noted that there was minimal instruction throughout the lesson, that Appellee only engaged with a couple of students in her classroom, and that she inappropriately addressed individual student issues in front of the entire class. *Id*. Appellee received several "Level 1" ratings in that observation, meaning she failed to meet a minimum standard of instruction. [R2-1200-3].

Despite the letter of directive and a meeting with Appellee following the subsequent observation, complaints from students in Appellee's class increased. [R2-304-362]. With no improvement by Appellee, Mr. Howell gave a second letter of directive to her on December 19, 2017. [R2-1204-5]. The second letter addressed Appellee's continuing refusal to provide help to students, her unwillingness to assist students, and her unprofessional interactions with students and staff members. *Id*. The letter indicated that students were still reporting that they were not receiving assistance and were sometimes told to ask for help from another teacher. *Id*. When Appellee met with administrators to review the second letter of directive, she repeatedly denied that she had failed to help students, insisted that students were lying about her, and claimed the administration was manufacturing false evidence about her. [R2-311]. Her classroom behavior, however, would later be substantiated by a photo that a student took of her when she was supposed to be teaching.

By coincidence, an hour before Mr. Spillers and Mr. Howell were to meet with Appellee on December 19th to go over the directive letter, a student approached Mr. Howell with a picture of Appellee showing Appellee on her phone, with her feet up, and with a Chromebook on her lap during class time. [R2-312; 315]. Mr. Howell had actually walked into Appellee's room not long after the photo was taken and had seen Appellee in the same position shown in the photo. [R2-368]. However, Mr. Spillers and Mr. Howell decided not to discuss the photo with Appellee during the December 19th meeting, as Mr. Spillers wanted to first investigate the photo's authenticity and speak with Principal Jonathan Gibson and Superintendent Melissa Williams to decide how to proceed. [R2-313-4].

In the meantime, Appellee requested a meeting with Assistant Superintendent Joy Woods, which included Mr. Gibson, and was scheduled for early January. [R2-406]. At the meeting, Mr. Gibson went over both prior letters of directive with Appellee and underscored that both letters and the continued reports showed a pattern of not helping students. [R2-407]. As in Appellee's prior meetings with Mr. Howell and Mr. Spillers, Appellee claimed that the content of the letters was false and "they're lying" with regard to the student reports. [R2-407]. So Mr. Gibson presented Appellee with the photo of her in the classroom with her legs propped up while on her Chromebook during class time. *Id*. Appellee

suddenly changed her demeanor and quit claiming the letters were lies, instead begging to see what she could do to get a second chance. *Id.*

Unfortunately, Appellee's behavior still did not improve after the meeting with Mr. Gibson. On January 30, 2018, Mr. Howell observed Appellee on her computer in the classroom and away from her students. [R2-1217]. On February 8, Mr. Spillers stood in the side of Appellee's room and observed Appellee on her Chromebook for five minutes without moving. [R2-321]. When Appellee finally noticed Mr. Spillers, she suddenly got up to appear to help a student. *Id.* Yet it was evident from the student's reaction that she had not asked Appellee for help. [R2-321; 1208]. At the same time, Mr. Spillers noticed another student with her hand raised and was particularly upset, so he asked the student what was going on. [R2-321]. She expressed her frustration that she had been asking for help from Appellee the entire class period but was not receiving any. *Id.*

Less than a week later, that same student approached Mr. Spillers for assistance with her ongoing frustration with the lack of help she was receiving in Appellee's class. [R2-323]. As had been reported by multiple students over the year, the student reported that if she expressed to Appellee that she was having difficulty with a subject or needed a quiz to be reset that Appellee would acknowledge the request but would never return to help. [R2-1208]. Most of the time, Appellee would return to her chair without offering any help. *Id.*

8

During Appellee's second formal observation on March 12, 2018, Mr. Spillers continued to note that only a few favorite students were receiving help from Appellee. [R2-325]. Though it is unusual for an administrator to assist in the classroom during a formal observation, Mr. Spillers eventually approached a student whose hand had been raised throughout his entire observation. [R2-325-6]. The student responded that he had been waiting for 30 minutes for Appellee to reset an assignment, so the student had spent the entire time unable to do any coursework. [R2-325].

For a number of Appellee's students who were continuing to complain about the constant problems in her class, Mr. Howell moved them into his own class or to a paraprofessional's classroom in WVA. [R2-371]. But eventually there were so many students who were moved to other classrooms that there were not enough desks to seat all of them. [R2-372]. Mr. Howell created space in an office to accommodate the number of students who were transferred out, and some students in his class were sitting on the floor. *Id.* But even that did not stop the complaints. *Id.* For those still in Appellee's classroom, Mr. Howell would tell them to just walk into his room if they needed assistance, because he had nowhere else to sit them. [R2-371]. After students were reassigned to other teachers, the students finally began making progress in their classes and receiving help when it was sought. [R2-415; 429; 440; 452].

Appellee's refusal to assist students led to an enormous failure rate of students in her class. At the end of the school year, Mr. Howell created a spreadsheet of the number of students failing classes each period of the day in both Appellee's room and the remainder of the WVA. [R2-375]. Barely 50 percent of the students in Appellee's class passed their WVA courses; yet the pass rate was almost 92 percent for students who were assigned to other staff at WVA. [R2-378]. The startling numbers serve to corroborate the constant reports and observations of Appellee's ineffectiveness in the classroom.

With the writing on the wall, Appellee filed an EEOC Charge of Discrimination on April 19, 2018 – at least a month and a half after she was told by her principal that her employment contract would not be renewed.[1] [R2-222-224]. That charge of discrimination alleged various behavior by Rabun County High School administrators, including Mr. Spillers, Mr. Howell, and Mr. Gibson, as well as Ms. Woods and a teacher and paraprofessional in WVA. [R2-222-224].

Though Appellee was aware of the Superintendent's decision not to recommend renewal of her employment contract, formal notice of that decision was sent to Appellee on May 14, 2018 pursuant to the requirements of the Fair Dismissal Act of Georgia. [R2-160-162]. That notice officially informed Appellee

---

[1] The charge of discrimination alleges that she was told on both January 5, 2018 and February 28, 2018 that her employment contract would not be renewed. [R2-223; 224].

of her rights under the Fair Dismissal Act, including the right to request a hearing before the Rabun County Board of Education and notice of the reasons for the proposed nonrenewal. *Id.*

On May 17, 2018, Appellee sent an "update" to her charge of discrimination to the EEOC, which alleged events that involved Mr. Howell and the WVA paraprofessional. [R2-225-226]. And on May 30, 2018, Appellee's counsel sent a formal request for a hearing and notice of charges under the Fair Dismissal Act. [R2-163]. In response, notice of the charges and bases for Appellee's nonrenewal were sent on June 13, 2018. [R2-164-171]. Finally, on June 25, 2018 Appellee sent another "update" to her charge of discrimination, which only generically alleged that the claimed discrimination had continued and that her contract was not renewed. [R2-227]. Of course, no hearing had been held by the Rabun County Board of Education at this point regarding whether to nonrenew her contract. After rescheduling, that hearing was ultimately held on November 13, 2018.

But the day before the hearing, Appellee filed a motion to require the Local Board to appoint a tribunal to hear the case under the under O.C.G.A. § 20-2-940(e)(1). The basis for her motion centered on the EEOC Charge of Discrimination that she had filed after being informed that her employment contract would not be renewed. [R2-217-229]. Appellee asked that the Local Board postpone the hearing yet again and appoint a tribunal to hear the case as

11

permitted by the Fair Dismissal Act, even though a tribunal would merely make recommendations to the Local Board, which retained the ultimate decision-making authority.[2]

Appellant and Appellee had stipulated to a "disinterested member of the State Bar of Georgia [to] decide all questions of evidence and other legal issues arising before the local board," and serve as a hearing officer pursuant to O.C.G.A. 20-2-940(e)(4). [R2-249]. The hearing officer took up the motion at the outset of the hearing, outside of the presence of the Local Board. [R2-250]. Not only did Appellee's allegations with the EEOC not allege any conduct involving any member of the Rabun County Board of Education, the members of the board of education had **not** been made aware that a charge of discrimination had been filed with the EEOC. [R2-267; T-26-7]. The hearing officer denied the motion, noting that there was no "specific allegation of one of these Board members discriminating against her because of her age . . . or influencing the Superintendent, or directing the Superintendent to terminate because of her age, or something along those lines." [R2-270]. After a lengthy evidentiary hearing, the Rabun County Board of Education voted to uphold the Superintendent's recommendation to nonrenew Appellee's employment contract. [R2-243; 572].

---

[2] *See* O.C.G.A. § 20-2-940(e)(1) ("The hearing shall be conducted before the local board, or the local board **may** designate a tribunal to consist of not less than three nor more than five impartial persons possessing academic expertise to conduct the hearing and **submit its findings and recommendations to the local board for its decision thereon**.") (emphasis added).

Appellee appealed the decision of the Rabun County Board of Education to the State Board of Education, contending the Local Board should have appointed a tribunal, as well as numerous other bases for reversal. [R2-240-1]. However, the State Board of Education unanimously upheld the decision of the Rabun County Board of Education.[3] [R2-8-15]. It determined that:

> There is no requirement that a tribunal be designated for these proceedings. In situations where an individual board member has some direct involvement or specific bias, that board member should be recused. The facts in the instant case, however, do not support the [Appellee's] claim of a due process violation.

[R2-11]. Appellee then appealed to the Superior Court of Rabun County based on numerous arguments which had all been rejected by the State Board of Education. The Superior Court of Rabun County reversed the decisions of the Local Board and State Board of Education based solely on the failure to postpone the hearing and appoint a tribunal. [R1-103-110].

---

[3] https://simbli.eboardsolutions.com/Meetings/Attachment.aspx?S=1262&AID=1068661&MID=74995 at p. 10, Item 69.

## **PART TWO**

## **ENUMERATION OF ERRORS**

I.     The superior court erred in reversing the decision of the Rabun County

Board of Education to nonrenew Appellee's annual employment contract

based on a refusal to appoint a tribunal requested for the first time on the eve

of the Fair Dismissal Act hearing, when the basis for the request was an

EEOC Charge of Discrimination filed months before by Appellee that made

no allegations regarding any board member and which the board of

education had not been made aware of its existence.

## **STATEMENT OF JURISDICTION**

This Court has jurisdiction of this case on appeal because it does not concern

a matter where, pursuant to Ga. Const. of 1983, art. 6, § 6, ¶¶2-3, the Supreme

Court has either exclusive or general appellate jurisdiction.  An appeal from a

decision of the superior court reviewing decisions of the State Board of Education

is not reserved to the Georgia Supreme Court.

## PART THREE

## STANDARD OF REVIEW

It is well established that "[s]itting as an appellate body, the superior court is bound to affirm the decision of the local board if there is any evidence to support it. In matters such as this, the superior court should not interfere with a local board's administration of its schools unless the board has grossly abused its discretion or acted arbitrarily or contrary to law." *Clinch County Bd. of Educ. v. Hinson*, 247 Ga. App. 33, 36 (2000) (citing *Ransom v. Chattooga County Bd. of Educ*, 144 Ga. App. 783 (1978); *D. B. v. Clarke County Bd. of Educ.*, 220 Ga. App. 330, 333 (1996); *Terry v. Houston County Bd. of Educ.*, 178 Ga. App. 296 (1986)); *Dukes-Walton v. Atlanta Indep. Sch. Sys.*, 336 Ga. App. 175, 176 (2016). *See also Moulder v. Bartow County Bd. of Educ.*, 267 Ga. App. 339, 340 (2004) ("when reviewing decisions of a local board, both the State Board and superior court sit as appellate bodies applying an 'any evidence' rule to the facts of the case."). Thus, if there is any evidence in the record from the proceedings below to support the decision of the local board of education, the State Board's decision to uphold the local board must be sustained by the superior court and any subsequent appellate courts.

Georgia law prohibits an appellate court from substituting its judgment for that of a local board of education. The Georgia Court of Appeals considered this

15

issue in *D.B. v. Clarke County Bd. of Educ*, 220 Ga. App. 330, 333 (1996), and stated "[i]t has been held consistently that the courts will not interfere with a local board's administration of its schools unless the board's actions are contrary to law or it appears that the board has grossly abused its discretion." The Court must "presume, absent clear evidence to the contrary, that the acts of a local board are not arbitrary and capricious." *Dukes-Walton*, *Id.* at 176 (citing *King v. Worth County Bd. of Educ.,* 324 Ga. App. 208, 749 S.E.2d 791 (2013). *See also Atlanta Indep. Sch. Sys. v. Wardlow*, 336 Ga. App. 424, 424 (2016)("we must presume that the school board's actions are reasonable, rather than arbitrary or capricious, unless clear evidence demonstrates otherwise.").

Finally, the Georgia Court of Appeals has "recognized that the State Board [of Education] is the governmental agency charged by law with enforcement of the Fair Dismissal Act and that its interpretation of the statute, though not conclusive, is entitled to great weight." *Moulder v. Bartow County Bd. of Educ.*, 267 Ga. App. 339, 340 (2004) (citing *Curry v. Dawson County Bd. of Educ.*, 212 Ga. App. 827, 829 (1994)); *Dukes-Walton* at 179. "Although [the appellate court] is 'not bound to blindly follow' an agency's interpretation, [it defers] to an agency's interpretation when it reflects the meaning of the statute and comports with legislative intent." *Moulder* at 341 (citing *Schrenko v. DeKalb County School Dist.*, 276 Ga. 786, 791 (2003)).

## ARGUMENT AND CITATION OF AUTHORITY

The Georgia Constitution expressly grants the authority to manage and control local schools to the local board of education. "Each school system shall be under the management and control of a board of education, the members of which shall be elected as provided by law." Ga. Const. Art. 8, § 5, ¶ II. The Georgia Supreme Court describes the impact of this constitutional provision as follows:

> This language continues the line of constitutional authority, unbroken since it was originally memorialized in the 1877 Constitution of Georgia, granting local boards of education the exclusive right to establish and maintain, i.e., the exclusive control over, general K–12 public education. . . . By providing for local boards of education to have exclusive control over general K–12 schools, our constitutions, past and present, have limited governmental authority over the public education of Georgia's children to that level of government closest and most responsive to the taxpayers and parents of the children being educated. The constitutional history of Georgia could not be more clear that, as to general K–12 public education, local boards of education have the exclusive authority to fulfill one of the 'primary obligation[s] of the State of Georgia,' namely, '[t]he provision of an adequate public education for the citizens.' Art. VIII, Sec. I, Par. I.

17

*Gwinnett County. Sch. Dist. v. Cox*, 289 Ga. 265, 266 (2011) (citations and footnotes omitted). This means, as the Supreme Court of Georgia has recognized, that local boards of education are "**constitutionally empowered** to manage and control the school system." *Powell v. Studstill*, 264 Ga. 109, 110, (1994) (emphasis added). As a part of their responsibilities to manage and control school systems, local boards of education are authorized to sit as evidentiary tribunals in proceedings brought under the Fair Dismissal Act to terminate, demote, or suspend professional staff members and nonrenew their contracts of employment. Decisions from these proceedings may be appealed to the State Board of Education, the local superior court and then the appellate courts. O.C.G.A. §§ 20-2-940(f); 20-2-1160. But in deference to the constitutional role local boards play, "**neither the state board nor the superior court shall consider ... the matter de novo, and the review by the state board or the superior court shall be confined to the record**." O.C.G.A. § 20-2-1160(e) (emphasis added).

"Appellate review is deferential because 'states and local authorities have a compelling, legitimate interest and broad discretion in the management of school affairs. Moreover, teachers and principals are considered professionals whose services are affected with the public interest. It follows that state and local authorities have a legitimate interest in securing the employ only of those fit to serve the public interest.'" *Atlanta Indep. Sch. Sys. v. Wardlow*, 336 Ga. App. 424,

424–25, (2016) (quoting *King v. Worth County Bd. of Educ.*, 324 Ga. App. 208 (2013)).

Also in deference to the local boards' constitutional authority, appointment of a tribunal in a Fair Dismissal Act hearing does not ultimately remove final decision-making authority from the local board itself. Instead, the "local board may designate a tribunal . . . to conduct the hearing and **submit its findings and recommendations to the local board for its decision thereon**." O.C.G.A. §20-2-940(e)(1) (emphasis added). "Where the hearing is before a tribunal, the tribunal shall file its findings and recommendations with the local board within five days of the conclusion of the hearing, and the **local board shall render its decision thereon** within ten days after the receipt of the transcript." O.C.G.A. § 20-2-940(f) (emphasis added). In other words, the local board makes the ultimate decision to nonrenew or terminate an employment contract, even if it appoints a tribunal to conduct the Fair Dismissal Act hearing.

In reaching its decision, the superior court ignored this constitutional mandate and determined that Appellee was entitled to dictate the manner in which the Rabun County Board of Education chose to exercise its responsibility to determine whether Appellee's employment continued to serve the public interest of the school district. And the basis for seeking to require appointment of a tribunal was solely through her own action of deciding to file a Charge of Discrimination

19

with the EEOC, rather than due to some action or conduct of any member of the Local Board.

The question of Appellant's entitlement to the appointment of a tribunal under the Fair Dismissal Act has already been decided by the Eleventh Circuit in *Holley v. Seminole County School Dist.*, 755 F.2d 1492 (11th Cir. 1985). There, the plaintiff's contract was nonrenewed following a hearing before the local board of education pursuant to the Fair Dismissal Act. The hearing occurred following Holley's defeat for the elected position of school superintendent and subsequent political involvement in which he actively sought to have local legislation enacted to change the method of selecting local school board members from appointment by the grand jury to popular election. *Id.* at 1495. At that time, rather than a tribunal, the Fair Dismissal Act provided that "the local board *may* refer the matter for a hearing by the Professional Practices Commission[4] ('PPC')." *Id.* at 1498. Holley argued that he was denied due process because the local board failed to refer his case to the PPC. He believed the case was "suited for adjudication in front of the PPC because of the 'political' atmosphere in which the nonrenewal of his contract took place." *Id.* The Eleventh Circuit disagreed:

---

[4] The Court described the PPC as "an independent commission consisting of elementary school teachers, secondary school teachers, an elementary school principal, a secondary school principal, local superintendents, and a representative of the Department of Education, all of whom are appointed by the state school superintendent." *Holley* at 1498.

Holley does not cite, nor can we find, any case law which suggests that the statutory provision for referral of cases to the PPC is anything but **a matter of absolute discretion lodged in the local board**. Adjudication in front of the PPC **or an analogous independent adjudicatory body** is certainly not required by federal due process.

*Id.* (citing *Ferguson v. Thomas*, 430 F.2d 852 at 852 (5th Cir. 1970) (emphasis added).[5]  While the Fair Dismissal Act now provides that a local board "may designate a tribunal of [three to five] impartial persons" rather than referring the matter to the PPC, the due process requirements are unchanged, and the decision to appoint a separate tribunal remains "a matter of absolute discretion lodged in the local board" and is not mandated by the Act.

Instead, the superior court erroneously relied on this Court's prior decision in *Johnson v. Pulaski County Board of Education*, 231 Ga. App. 576 (1998), which addressed recusal of an individual board member from participating in a Fair Dismissal Act hearing.  In *Johnson*, the chairman of the local board of education was **personally** involved in criticism of the educator's performance and was **personally** involved in seeking her termination from employment, but nevertheless

---

[5] The reasoning of the superior court's Order oddly relied on *Ferguson*'s due process requirement that "the hearing should be held before a tribunal that both possesses some academic expertise and has an apparent impartiality toward the charges," even though the 11th Circuit's subsequent decision in *Holley* expressly cited *Ferguson* in determining federal due process does not require adjudication before an independent adjudicatory body.  [R1-106-107]; *Holley* at 1498.

participated in the Fair Dismissal Act hearing over the educator's objection. *Id.* at 578. The State Board of Education determined on appeal that the chairman's participation deprived Johnson of due process, which was affirmed by this Court.

Unfortunately, the Rabun County Superior Court twisted and misapplied that reasoning in reversing the Local Board's decision in this case. Here, there was no personal involvement by any board member in criticizing or seeking Appellee's termination from employment – there was ***not even an allegation*** of such personal involvement by any board member, much less any evidence of same. But the superior court stretched to decide that "all board members had a personal interest in seeking [Appellee's] removal because the entire board was the defendant in the pending EEOC charge." [R1-107]. However, it was impossible for any board member to have a personal interest in the outcome of the hearing because of an EEOC charge when they were **not** even aware of that charge. The superior court provides no explanation for how board members could have a bias because of the EEOC charge when they were unaware of its existence.[6]

In reaching its decision, the superior court also misstated and misapplied this Court's decision in *Wright v. Monroe County Bd. of Educ.,* 148 Ga. App. 845

---

[6] The superior court's Order also inexplicably reasoned that the board of education would benefit from nonrenewing Appellee's contract following the hearing "because the hearing provided legal support to the board's arguments before the EEOC." [R1-107]. It is entirely unclear what this means, as it seems to suggest that somehow the basis for her nonrenewal and evidence to support it would have been different if a tribunal had been appointed by the Local Board.

(1979). The superior court determined that based on *Wright*, "[t]he Code of Judicial Conduct is applicable to local boards of education when they sit in a judicial capacity in nonrenewal matters."[7] [R1-106]. However, *Wright* did not involve a teacher nonrenewal at all, but instead was a challenge to a local board's decision on the location of a new high school that did not arise under the Fair Dismissal Act. *Id.* at 845. Furthermore, this Court in *Wright* merely "assum[ed] arguendo that the Code of Judicial Conduct is applicable to members of a local board of education presiding at [an O.C.G.A. § 20-2-1160] hearing" and found the Canon at issue was not violated.

In this case, the parties had stipulated to a disinterested member of the State Bar to "decide all questions of evidence and other legal issues," making the role of the Local Board more analogous to that of a jury than a judge. Wholesale application of the Code of Judicial Conduct to a local board in a Fair Dismissal Act hearing is unsound at best.

The result of the superior court's analysis is to permit any educator in a Fair Dismissal Act hearing to usurp the board of education's constitutional role and disqualify any board of education in the state from hearing the case directly simply by filing an EEOC complaint – even though such behavior is not even allowed to

---

[7] The superior court analyzed "Rule 3.9(A)" of the Code of Judicial Conduct regarding disqualification and recusal. It appears this citation may have been to a previous version of the Code of Judicial Conduct, as it appears the correct rule regarding disqualification and recusal is Rule 2.11.

force the recusal of trial judges from criminal trials. *Cf. Baptiste v. State*, 229 Ga. App. 691, 697 (1997) ("Even when the defendant sued the trial judge, arising out of the case before the judge, such suit did not provide grounds for recusal; otherwise, parties could file frivolous suits against the trial judge for delay and to judge shop.") (*citing Mapp v. State*, 204 Ga. App. 647, 649(4) (1992)). Such an outcome not only undermines a local board's constitutional authority to control and manage the school district, the authority provided to local boards of education under the Fair Dismissal Act and the "absolute discretion" to appoint a tribunal recognized in *Holley*, but is particularly inappropriate in a case such as this where Appellee's EEOC charge was directed at school administrators and the Superintendent, and not at any action of any member of the Local Board. The result is even more outrageous when considering that the Rabun County Board of Education members were not even aware of the existence of the EEOC charge that supposedly required their recusal.

The members of the Rabun County Board of Education, as the elected representatives of the community, have the responsibility under state law and the Georgia Constitution to set the standards the school system's professional staff must meet. Where an individual board member has been so personally involved in seeking an employee's termination or nonrenewal that they cannot be impartial in hearing and deciding that particular employee's case, *Johnson* holds that the

individual board member must recuse himself or herself from that particular hearing. But a teacher facing a Fair Dismissal Act hearing cannot and should not be able to unilaterally deprive those elected officials of their responsibility for setting employee standards simply by filing a complaint with the EEOC that does not even allege any discriminatory conduct by any board member. Furthermore, a single superior court judge may not remove that responsibility from the local board over the unanimous decision of that local board to nonrenew Appellee's employment contract and the State Board of Education's unanimous decision affirming the nonrenewal.

## CONCLUSION

In reversing the decision of the Local Board and State Board of Education, the superior court failed to apply the correct standards for recusal of board members in a Fair Dismissal Act hearing and failed to give proper deference to the State Board of Education's interpretation of the Fair Dismissal Act. In doing so, it violated the constitutional allocation of power that grants to local boards the authority to control the quality of its teaching staff—the most critical element in the provision of quality education to students in the state. This Court should not permit this encroachment by superior courts. Accordingly, the Rabun County Board of Education respectfully requests this Court to reverse the decision of the Rabun County Superior Court.

This 20th day of January, 2021.

## CERTIFICATION

This submission does not exceed the word count limit imposed by Rule 24.

HARBEN, HARTLEY, & HAWKINS, LLP

340 Jesse Jewell Parkway, Suite 750    **/s/Brian C. Smith**
Gainesville, GA 30501                 Brian C. Smith
Phone: (770) 534-7341                 Georgia Bar No. 001306
Fax: (770) 532-0399
Email: bsmith@hhhlawyers.com          ATTORNEY FOR APPELLANT RABUN
                                      COUNTY BOARD OF EDUCATION

## CERTIFICATE OF SERVICE

I have this day served a copy of **BRIEF OF APPELLANT** via e-mail to the

following and certify there is a prior agreement with Kris Brown, to allow documents

in a PDF format sent via email to suffice for service:

Kris Brown
kbrown@orrbrownandbillips.com
Orr, Brown and Billips, LLP
P.O. Box 2944
Gainesville, GA 30503
(770)534-1980

This 20th day of January, 2021.

HARBEN, HARTLEY, & HAWKINS, LLP

340 Jesse Jewell Parkway, Suite 750 | **/s/Brian C. Smith**
Gainesville, GA 30501 | Brian C. Smith
Phone: (770) 534-7341 | Georgia Bar No. 001306
Fax: (770) 532-0399 |
Email: bsmith@hhhlawyers.com | ATTORNEY FOR APPELLANT RABUN
| COUNTY BOARD OF EDUCATION